Good morning, Your Honours. May it please the Court, my name is Darren Tushnaya, representing the appellants in Patients 1 and Patients 2 in this case. I'd like to reserve a couple of minutes at the end for rebuttal. If I may, I just want to briefly go over the facts in this case. Here we have two women who were suffering severe health conditions because of morbid obesity, breathing problems, sleep apnea, knee pain, back pain, high blood pressure. So they ask around from these very co-workers and say, you know, what did you do about your problems? And they said, well, we had lap band surgery from this particular place. So they go to that particular place, they find that- Mr. Tushnaya, I don't know if I'm speaking for my two colleagues, but we've read all your briefs. We're very familiar with the factual background. You're here on an appeal from the denial of a preliminary injunction. Why aren't damages sufficient to adequately redress the injuries that your plaintiffs are claiming? Damages are not sufficient for a couple of reasons. First of all, because the position that these women were put in is they had a choice. They could choose to go to the surgeon who performed their surgery for the follow-up surgery and be out of pocket a lot of money or go find an HMO doctor. And as this court and other courts have said, and particularly the- But doesn't it just come down to a choice? They're going to have to fund out of their own pocket at much greater expense out-of-network health care providers for after-surgery care versus going to the in-network providers for that same care within whatever the constraints are of the insurance contract. But we're still talking about money here. No, Your Honor, because these people have purchased PPO insurance so that they can go out of network, so that they can go to the doctor of their choice, so that they can go to the surgeon who actually successfully performed their surgery for follow-up surgery. But if you had- But it's a question of who pays and how much. I'm really- It's not a question of how much you pay. I'm having a hard time determining why you need an injunction. Because first of all, ERISA particularly contemplates these situations. Section 50283 says a participant or beneficiary can bring a claim to enjoin any act or practices which violate any provision of this subchapter or the terms of the plan. Well, you didn't give us copies of the plans, did you? So we have no idea what the terms of these insurance contracts are, do we? There's no dispute, Your Honor, that the terms of the plan- Can you answer my question? Are they in the record or not? I didn't see them. Are the plans in the record? Oh, you know why? Because the providers requested copies of the plan, and one of the violations that United and the defendants failed to do was fail to provide copies of the plan to the providers, and that's an ERISA violation. And so the two things that we're seeking injunctive relief on, number one, is to cease violating the terms of ERISA, and I'll get to that in a second, and the other is to cease violating the terms of the plan. These are PPO plans, which allow the patients to go out of network. They can still go to the original doctor. They just have to pay it out of their own pockets. For the original surgery, for all the pre-surgery services, for all the follow-up services- I'm talking about the follow-ups. They've already had the surgery, right? They've both already had the surgery. So if they wanted to, they could go back to those doctors and pay out of their own pockets. Well, you're asking a doctor to say, okay, I haven't even paid for the pre-surgery. I haven't even paid for the surgery. That's not the question I'm asking you, though. My question is, they could go back to the doctors who did the surgery and get the adjustment of the band and pay for it out of their own pockets. Well, first of all, it's not one adjustment. It's multiple adjustments as they lose weight. They can do all of that and pay it out of their own pockets. They don't have money to. That's why they have PPO insurers. Well, I understood the judge to say, you know, it was 300 bucks. He didn't- That is a faulty reasoning on the part of the district court, and let me explain why. The 300 versus 30, 300, right? Right. The 300 is what an in-network doctor would get from an insurance company, not what an out-of-network doctor- an in-network gets paid reduced amounts because of volume. If she wants to go back to the doctor that performed the surgery, in addition to all the amounts that haven't been paid, she's still liable for all of those additional- all those amounts. She has to pay not the $300. There's no contractual rate. That's a contractual rate. This is a- what the out-of-network doctors charge far more in a non-contractual situation. But the whole point of signing up for health care under a pervert provider plan is just that, to take advantage of the preferred provider plan's better bargaining power in getting hopefully the same quality medical services at far lower cost. No, Your Honor, the whole point of getting a PPO policy. These members were given a choice, an HMO, go in-network, or a PPO, which you pay more for to allow you to go to your out-of-network provider. And the patient cost portion is higher than that. But the provider still gets paid the majority amounts by the insurer. But that doesn't mean that there's unlimited payment. I mean, the PPO administrator still can question the amount of the bills and can still ask for supporting documentation. Absolutely. You're 100 percent correct. United did not have to pay what the PPO, the out-of-network PPO providers charge. They can determine a reasonable customer amount. So in the first part, you're absolutely correct. This is not a case about how much they charge and how much United should have paid. Well, it might be if when the records are provided, which I understand they still haven't been, there might be a dispute with regard to whether or not they need to pay anything if the surgeries were not medically justified. But we don't know that because the claims haven't been adjusted. And the reason why the claims haven't been adjusted, Your Honor, is because United says we need more medical records. The providers call up and say what medical records, and they say we can't tell you. The patients themselves called up and said what medical records need to be provided. United can't say. That is the only reason United gave for not processing the claim. It's not the only reason. I mean, how do you explain the 1-800-get-thin doctors who apparently have been under investigation by the State Attorney General's Office and perhaps Federal Medicaid and Medicare investigators for fraud? First of all, Your Honor, now you're doing exactly what United wants. You're going outside of the administrative record to look at newspaper articles to say these claims shouldn't be paid because there's bad publicity. I'm still trying to decide why money damages can't adequately be adjusted. And the other reason, Your Honor, is that United, according to their briefs, started knowing about the get-thin people in 2010. They specifically authorized these patients to go to these doctors in December 2010 and 2013. If they didn't want to pay these doctors and said we're never going to pay these doctors, then don't authorize the services. But here they specifically authorized the services after knowing about the get-thin three years later, and then they give us various reasons for not even processing the claim. We can't even get to the medical necessity, Your Honor. They just say give us more documents. Why can't all of that be resolved in discovery? If they won't give you the documents you need, why can't that be resolved by the district court throughout the pretrial proceedings? Why would you need a preliminary injunction to resolve disputes regarding turning over documents? Because these patients need this follow-up care. And they are given a choice to go to the original doctor, which they can't afford, that's why they have insurance, or go find another surgeon to do the surgery, the follow-up surgery that is needed. But aren't those bariatric specialists available within the network at these so-called centers of excellence? All you're talking about is adjusting the lap band. It's a relatively simple procedure. These patients are entitled to the benefits of their PPO policy, which they paid more for to go out of network. And United can't just say we're going to come up with this spurious reason for not paying the claims, and when we don't pay the doctor that you chose and which you're allowed to go to under your policy, just go find an HMO doctor. Before you run out of time, could you address the misjoinder issue? Yeah. The reason why, the precise reason why we brought these two patients' claims together is to show that there's this pattern by United of saying give us more documents, but we can't tell you what documents you need, so we're never even going to process your claim. And it's the same, these cases are logically related. It's the same patient. Well, but the patient said we have different surgeries, we have different contracts, insurance contracts that are at issue. And I guess one of the patients was covered, but the other one was not. So why is that an abuse of discretion to say, look, just prosecute these two claims separately? Because, Your Honor, they're both PPO patients without a network benefit. They both had bariatric surgery. They both were approved. They were both claims were not processed for the same reason, give us more documents, but we can't tell you what documents. And both patients can't afford to pay the doctors that they originally saw, and they don't want to go to find another doctor because United is not doing what it's supposed to do under their PPO policy. But United has offered them other doctors. It hasn't really offered. It said go find an in-network HMO doctor. Right, and here are ten centers of excellence where we have bariatric medicine specialists that can adjust a lap band. ERISA has injunctive relief to allow people to enforce their policies. And these policies say to these patients, you paid extra to go out of network. Well, how can we order the entry of a preliminary injunction telling United to pay these claims when you haven't even provided us with the copies of them? We're asking this Court to, under ERISA and the regulations under ERISA, when United denies a claim, it has to provide a description of additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary. 29 CFR 2560.503-Y. United never did that. They haven't denied the claim at all, as I understand it. They refused for three years to process the claim because they say... Well, why aren't you at best entitled to an injunction that says process the claim? Approve it or deny it. That's exactly what we're asking for. That's all? That's what we're asking for, yes. And to cease using... Do I have you right? Absolutely, yes. And to cease using these spurious reasons, comply with ERISA. Well, that's more than just processing the claim. No. Now you're telling us to direct them on how to process the claim. No. And that's different than saying process the claim. What we're saying is comply with these ERISA regulations. If you want additional information, tell us what record is missing and tell us why you need it. And they refuse to do that, even when the patients call. That's what we're asking for. We're asking for an injunction for them to process the claim and in compliance with the ERISA regulations. I have in my notes, and I may have gotten this wrong, but I have that you sought an injunction requiring payment of anticipated expenses and already incurred expenses. Well, Your Honor, if they process the claim, they should pay it. Well, they might deny it. It might not be covered. It might be exorbitant charges. It might be unreasonable. I mean, I don't know, but I want to make sure I understand what your gripe is. It sounded like what you wanted was money, payment now, and just a couple of minutes ago you said what you want them to do is get off the dime. We want them to process in compliance with their policy and in compliance with their ERISA regulations. That was this injunction. Which brings us to whether it's really these are covered charges or not covered charges. Yes, except that they didn't raise any issue in the administrative process that these were not covered charges, that these were not medically necessary. None of those. Under Harlech, they've precluded from raising that in court. The only thing that they're entitled to raise in court is the reason that they gave. We don't have enough documents, but we can't tell you which documents you haven't provided. So if they process the claim with that reason and that reason only, then we think that, you know, we want to make sure you have time left. Thank you. Thank you. Thank you, Mr. Tuchin. Good morning. Good morning, Your Honors. Do you need some water, Mr. Westerfeld? I think I'll be okay. All right. Thank you. May it please the Court, my name is Brian Westerfeld. I'm counsel for Appellees. First, I welcome any questions that the Court may have regarding issues presented by the parties in the briefs. But absent any questions, I'd like to focus my time on how the factual record that was developed below on the motion for preliminary injunction supports the district court's decision that a mandatory preliminary injunction is not warranted in this case. Counsel, as a preliminary matter, do you take issue with opposing counsel's representation that your client refused to process these claims? I do, Your Honor. Okay. So tell us what is wrong about that representation. We have a factual dispute that's detailed in the record below over how these claims have been processed. Plaintiffs or the patients allege, as Mr. Tuch argued, that United has, in every case related to these patients, requested additional documentation, not specified what additional documentation has been requested, and then has refused to respond to additional requests for what information is needed. Contrary evidence was submitted by United below in the form of declarations and documentary evidence that shows that that's simply not true. The only evidence provided on behalf of plaintiffs was the single declaration of a sole Get Thin Billing agent who testified without any citation to any particular claim document or appeal record or set of claim records that were submitted for patient one or patient two on a particular claim. Just saying that in every case related to tens of thousands of claims that I have handled on behalf of the Get Thin providers, we have submitted claims United has asked for additional documentation. They haven't told us what they want, and we've appealed every case, and United has denied every one. Can I speak with patient one and patient two? Sure. Okay, so what claims were submitted on behalf of those two patients? So with respect to patient one and patient two, the testimony of that Get Thin Billing agent is directly contradicted by the documentary for the actual lap band surgery. That claim was initially denied for failure to provide information. On appeal, administrative appeal, which is the process set forth by ERISA to handle exactly these types of disputes, that additional information was submitted with respect to that particular claim, and as a result, United actually paid $79,450 in response, in direct response to the information provided through that administrative appeal. That's undisputed, and we've submitted below a declaration attaching those appeal records and establishing that payment as a result of that appeal. So for patient two, what's at issue would be the adjustments. Is that correct? Primarily the adjustments going forward. There is still some dispute over some of the, and I can't recall specifically whether it's just the surgeon's fees or anesthesiologist's fees or some of the preoperative tests and the amount of payment, but it's undisputed that with respect to patient two, close to $100,000 was paid on these claims. That by itself completely belies the argument by plaintiffs that United has implemented this scheme of frustrating any claim by these get-then-providers and requesting information and not detailing what information is needed and then just stonewalling, essentially. What about patient one? With respect to patient one, United alleges that they have not provided the information that's been requested, and there's evidence below that was submitted on behalf of United that disputes that. Tell us exactly what you asked for. I can't tell you as I stand here, Your Honor, without going back to the record what specifically that United asked for on particular claims. For a particular patient, for instance, patient one. You're basically just jerking them around, asking for stuff that you don't tell them what it is, and you're making them do a lot of busy work, and I expected you to tell us, no, we need X, Y, and Z, but you don't even know what you asked for. Well, I don't believe that's fair, Your Honor, and let me explain why in the circumstances here. I do believe that if this case proceeds as ERISA cases are meant to proceed, right, for a trial on the merits, on the administrative record, all of those records will be provided, and the administrative record will be before the district court, and there will be complete transparency as to what United asked for, what was provided, and whether it was appropriate, and that's what the ERISA claims process and this lawsuit is supposed to be about. But what we're talking about here is plaintiffs trying to force payment on those disputed claims on a record that's created in essentially a matter of a couple of weeks where they filed a complaint, immediately filed a motion for preliminary injunction, and United has to scramble to try and defend that. But you should have in your records what documents you asked for from the claimants and what their response was for one patient. I'm not asking about all of the patients that are potentially members of the class, but just for these two patients that you knew were the named plaintiffs, it would seem that you would be able to tell us what the actual documents were that you requested that were not submitted by plaintiffs, that in some cases it was the operative report, in some cases it was the physical and medical history write-up that was provided for the patient. But the entire administrative record is not, I can't speak to it because it's not part of the record below. These records and requests were not submitted by plaintiffs, by the patients, and it's their burden on a motion for preliminary injunction to show that they're entitled to that relief. They presumably have copies of the requests that they allege they received from United. I put myself in the shoes of the district judge, and I get these people to come in and say, I have an insurance policy that covers this and I need to get this procedure done, and I've got the right to go to any doctor I want. And they won't pay it. So that if I'm the district judge, I look to the insurance company and I go, what's the problem? And I don't quite understand your answer. I think that that's what this lawsuit is for, Your Honor. I need the surgery now, not two years from now or after he comes back on appeal. They say they need the procedure now. And the reason the insurance company says they're not going to pay the doctor is because they're requesting bogus documents. And I look to you and say, okay, are you requesting bogus documents? And you don't know what's been requested. There is testimony below from United that United did request documents and that those documents were not provided in some circumstances. We're not saying that they weren't provided in every circumstance, and it's undisputed that with respect to patient two. You've told us how munificent you've been with patient two. Paid $100,000 after they appealed it. Patient one, I'm not sure what you folks have done except ask for some documents that we're not able to identify. The reality is for patient one that the record that we have on appeal here is essentially undeveloped in terms of on these issues. Exactly what the claims are. They didn't even submit what the claims are. They submitted a summary list of the claims from the Get Thin Billing agent and said, we submitted claims relating to this surgery. Here's the list of them, all these preoperative tests, the surgery, some post-care adjustments, and United has paid X. And we've submitted all of the appropriate documents in summary fashion, and we haven't been paid. And based on that record alone, they say you should force United to immediately pay all of those claims, despite the fact that they're in dispute. And United, if you can't in a matter of two weeks in response to this motion for preliminary injunction, come up with the entire administrative record and explain all the reasons why you should win this case and essentially try this case in two weeks, well, then you're stonewalling and being obstructive. And I just don't think that that's fair, Your Honor. And when it comes to what I think is a very important point, whether these patients are really being denied care. We need a surgery now, and it's not really we need a surgery, but we need adjustments. I think it's important to take a look at what the record established with respect to that. There is no evidence whatsoever that these patients are unable to get lap band adjustments, either from their chosen providers or from a number of other reasonable options that United has given them that wouldn't hold them hostage to the exorbitant rates that the record shows that the GetThin providers are purporting to charge them. If I could touch real quickly on the question that was first asked to Mr. Tooch about the actual price of these adjustments. And there's some evidence in the record with respect to the average reasonable charge for such adjustments. I saw the $300 versus the $3,300. Yes. But that really doesn't address the issue with regard to patient one, because the only thing I saw in the record was the declaration from I think it's the GetThin employee who was trying to respond to United's request for records. And it looked to me like it was sort of the classic almost voicemail jail of being referred from one part of United Healthcare to another part of United Healthcare, and the right hand didn't know what the left hand had asked for or what had been submitted. And the GetThin person is saying, we sent them what we have, and nobody at United seems to know what they have, so they can't really tell us what more we need. And what we have there, Your Honor, are what counsel has decided to excerpt from telephone conversations that they purport to have and we really have had no time or ability to develop a record to counteract. To be quite frank. Isn't there a computerized claim file where all those calls to United are tracked to a specific insured in order to determine how the claim is being processed? There isn't anything in the record that addresses that, Your Honor. Can you talk to your client to ask them how they track their claims processing history? I can tell you, Your Honor, from experience, to speak outside the record for just a moment, if requested, that it's not as simple as that sounds for a carrier who administers and processes 2 million claims a day to track down from a, to find the right database and locate the correct call record and find based on first names and. Your question is not their problem, you know, I mean. Fair enough, Your Honor, but what is at issue here is not really whether the records, whether a particular records request was appropriate or whether it was complied with. What is at issue is whether they have shown that a mandatory preliminary injunction forcing the payment of disputed claims is appropriate. How about forcing the processing of the claims? If the preliminary injunction just forces your client to process the claims, would that be a stronger case? It would be more practical in terms of administration, because I think as Your Honor pointed out, they have, that's not what they've asked for. What they've asked for is the immediate payment, but they haven't said what they're entitled to other than, this is what we build and we should be paid everything. They haven't said why the plan entitles them to that, and as Your Honor pointed out, they haven't identified the terms of the plan that they allege have been breached. They haven't identified a single actual claim record. They haven't established that they've actually exhausted administrative remedies with respect to all of these claims. Why didn't you provide copies of the plan documents to the district court so that the district court would know what the terms of the plans were on this issue? We did provide excerpts of the benefit plans with respect to both plans that establish that these are the plans that were covered. They're employer-sponsored plans. They are ERISA plans, and the plan administrator has discretion to administer the terms of the plan. Are Patient 1's claims still pending with United? No, the claim has been closed because records were requested. Well, there are different claims, so to say Patient 1's claims is sort of a summary. So Patient 1 has got literally dozens of claims related to their services, but to deal with them sort of collectively, some of them have actually been paid, a much lesser number than for Patient 2. For the lap band stuff, not other things? Yes, for the lap band, for the claims that are actually at issue here. Are there some that have been denied and some that are still under consideration? They have been denied in the sense that additional documentation was requested to substantiate the claim. That information was not provided, and as a result, the claim is essentially denied. So getting back to your point, it may be more practical in some circumstances to order processing of a claim if the claim is truly just sort of in the middle of being processed or it hasn't begun to be processed than it is to order payment on a claim where they haven't put in any information in the record as to how payment is calculated. But it sounds to me like you've closed the file on Patient 1. You've denied all the claims for which inadequate medical records were supplied, and you've paid the remaining claims at whatever the contract rate is. That's correct, Your Honor. So there's nothing to process, really? That's right. So an injunction isn't going to do the trick. What they're looking for is the payment of these claims. They don't want them just processed. They want them processed a particular way. That's what they requested. I see you're out of time. Thank you, Your Honor. Mr. Tuchin, let me summarize where I think we are, and you tell me if I've got this right. You say that these claims have been functionally denied when you were unable to furnish documents that they requested, and you don't know what they want exactly. Do I have it? That's right. What proof do you have that they requested documents that you can't reasonably understand what they want? If you look at the declaration of Ms. Salazar, she goes through what was requested. She has a copy of the letter, the form letter that United sends out on every claim to every patient. Tell us specifically what they requested that you can't comply with. It's not that we can't comply, it's that we have complied multiple times. So their letter says history and physical, presenting symptoms and complaints, finding and examination, lab tests, x-rays, consultation reports, daily progress notes, medication records, durable medical equipment, that's important, and other information that's not listed as part of the patient's treatment records. All of that's been provided on multiple times. So then the patients have called, and Ms. Salazar has called and said, what's missing? And they can't tell, and even the United Council today cannot say, oh, you're missing an x-ray for this date of service, you're missing a consultation report. The fact that they're asking for durable medical equipment on a lap band surgery, there's no such thing, shows that this is just a form document. They send it out on every claim. And so that's the problem now, is that essentially these patients are in limbo because they're saying, give us documents, but we won't tell you what documents are missing, and you provide everything that you need. And so because they've done that, go to an HMO doctor. How are you in limbo if the file has been closed? The patients are in limbo. The patients need this care. They want to go back to the doctors who performed the surgery because they feel comfortable with them. That's reasonable. The policy allows them to go to these doctors. They were authorized to go to these doctors. And they should not be given the Hobson's choice of saying, oh, just go find an inpatient, an HMO doctor, when that's not your policy, that's not the reason why you pay for a PPO policy. And, you know, I had shoulder surgery. I want to go back to the surgeon who successfully did my soldier's surgery, not find some other doctor who has never seen the medical record, doesn't know. If the file is closed, why can't you avail yourself of the or your clients avail themselves of the appeal process, the administrative appeal process through ERISA? We did. And it's deemed exhaustive because they didn't comply. There's nothing left to do. They say produce the documents. We say we have. Tell us what we can't do. That's the appeal process. They can't say what's missing. So that's exhaustive. The appeal process under ERISA is exhaustive. So now we have standing to come to court to say enforce the provisions of the policy. The policy says I can go out of network to a doctor of my choice. You authorized me to go to that doctor. And United's counsel said something which I just need to correct. He said we're just seeking a payment for whatever we bill. That's not true. We're seeking United pays a reasonable customary amount, or what it determines is due on out-of-network claims. We're not saying, oh, if we bill X amount, you have to pay us Y amount. We're just saying process the claim under the terms of the policy how you would pay an out-of-network claim. We're not saying you have to pay X, Y, and Z. Okay. And if I could just, you know. You're out of time. Thank you. Thank you. First of all, thank you. The case just argued is submitted. We'll stand and recess for the day. And, again, I want to thank our visitors for being with us.
judges: SILVERMAN, TALLMAN, RAWLINSON